O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

| Present: | The Honorable Otis D. Wright II, United States District Judge | |
|---|---|---|

| Raymond Neal | Not Present | n/a |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings (IN CHAMBERS):** Order Granting Defendant's Motion to Dismiss the First Amended Complaint and Deferring Ruling on Defendant's Motion to Dismiss the Cross Complaint [95]

Plaintiff, Junior Larry Hillbroom ("Plaintiff"), brings this action for legal malpractice, negligence, fraud, RICO violations and civil conspiracy against Defendants, David Lujan ("Lujan"), Barry Israel ("Israel") and Keith Waibel ("Waibel," collectively, "Defendants"). In essence, the First Amended Complaint ("FAC") alleges a broad conspiracy among Defendants to defraud Plaintiff out of millions of dollars he received in connection with the settlement of his deceased father's multi-million dollar estate. Lujan and Israel served as counsel in the underlying guardianship and probate proceedings, which took place in Guam and the Commonwealth of the Northern Mariana Islands ("CNMI"), respectively. Waibel is the co-trustee of the JLH Trust which holds, in trust and for the benefit of Plaintiff, Plaintiff's share of his father's estate. Plaintiff contends Defendants wrongfully capitalized off his newfound fortune by fraudulently and secretly increasing their retainer agreement from 38% to 56%.

Currently before the Court is Israel's Motion to Dismiss the Plaintiff's First Amended Complaint and Waibel's Cross-Complaint for Indemnification. (Dkt. No. 95.) After careful consideration of the briefing and evidence submitted, the Court deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78 ("Rule __"); L.R. 7-15. For the following reasons, the Court **GRANTS** Israel's Motion as to the First Amended Complaint and **DEFERS** ruling on Israel's Motion as to the Cross-Complaint.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

## I. BACKGROUND

The First Amended Complaint alleges the following:

When Larry Hillbroom passed away in May 1995, he left behind an estate worth approximately $550 million and four pretermitted children, one of whom is Plaintiff. (FAC ¶¶ 14-15.) To maximize his share of his father's estate, Plaintiff first retained the Family and Immigration Law Clinic ("FILC"), and later Defendants Lujan and Israel, to represent his (Plaintiff's) interests in both the CNMI Hillbroom Estate case ("Estate Case") and, because Plaintiff was a minor at the time, the underlying guardianship case in Guam ("Guardianship Case"). (*Id.*, ¶¶ 4, 20.) Plaintiff's mother and grandmother, Kaelani Kinney and Naoko Imeong ("Naoko"), respectively, were his co-guardians in both cases. Eventually, the Estate Case settled, entitling Hillbroom's four pretermitted children to a 60% share of his estate; approximately 15% (or, $90 million before taxes) of which belonged to Plaintiff. (*Id.*, ¶ 20.)

At the time of the Estate Case settlement, Lujan and Israel split a 22% contingency fee with Plaintiff's original counsel, the FILC. (*Id.*, ¶ 17.) According to Plaintiff, however, in January 1998, Lujan and Israel convinced Naoko to eliminate FILC and to execute a new, comprehensive 38% contingency fee of Plaintiff's gross settlement amount, in addition to any other subsequent or related litigation which may become necessary in the future. (*Id.*, ¶ 22.) Naoko executed the 38% retainer and, pursuant to Guardianship Court orders, Lujan submitted the proposed retainer for approval. For the next six months, the Guardianship Court scrutinized the proposed contingency fee and dutifully inquired into its appropriateness. (FAC ¶ 25.) Among other things, the Guardianship Court reviewed hundreds of pages of briefing, conducted multiple hearings on the matter, heard testimony describing the work Lujan and Israel had done in the underlying proceedings, considered Plaintiff's guardians' consent to the fee increase, and considered the fact that counsel for the other three heirs received fees no greater than 36%. (*Id.*, ¶ 26.) Ultimately, the 38% contingency fee was conditionally approved by the Guardianship Court in June 1998. (*Id.*, ¶¶ 25-26.) Meanwhile, Lujan and Israel obtained court approval to relocate Plaintiff and his grandmother to Guam, to use interim estate payments to purchase a home for them, and to pay for all guardianship expenses. (*Id.*, ¶ 24.)

Just prior to the first multimillion dollar settlement distribution, Lujan and Israel established the JLH Trust to receive settlement funds. (FAC ¶¶ 28-29.) Waibel, a California resident, was retained as the trustee, with the trust set up to operate out of his California office. (*Id.*, ¶¶ 28-29.)

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

In September 2000, Defendants applied to the Guam court to move Plaintiff to California and to deem Waibel Plaintiff's operative guardian while he was away from Guam. (*Id.*, ¶ 37.) Thereafter, at some point in time "well after the [Settlement Agreement] and while Waibel was Junior's operative guardian," Defendants embarked upon a scheme to wrongfully and fraudulently increase the contingency fee from 38% to 56%. (*Id.*, ¶¶ 38, 40.) To effectuate this scheme, Lujan allegedly submitted to the Guam Guardianship Court for approval, *ex parte* and under seal, the amended retainer agreement. It was "rubber-stamped" on September 8, 2002, and Defendants allegedly fraudulently backdated the increased fee agreement to April 15, 1999 in order to capitalize on the full settlement distribution. (FAC ¶ 41.) Defendants furthered their scheme to defraud by continuously submitting false filings and accountings to the Guam Guardianship court. It was not until November 10, 2006, when an FBI agent disclosed this alleged scheme to Plaintiff did Plaintiff learn of Defendants' wrongdoing. (FAC ¶ 49.) A tolling agreement was allegedly executed as to all claims. (*Id.*, ¶ 50.) This lawsuit was filed shortly thereafter.

In addition, Waibel filed a Cross-Complaint ("Cross-compl.") against his co-Defendants, Lujan and Israel. Waibel seeks indemnification from liability and asserts separate substantive claims of economic duress and fraud. (Dkt. No. 33.) Furthermore, Defendant, Lujan, has since been dismissed for lack of personal jurisdiction as to the First Amended Complaint and Cross-Complaint. (Order Granting Defendant Lujan's Motion to Dismiss, Dkt. Nos. 72, 100.)

## II.     DISCUSSION

Israel argues the followings: (A) Plaintiff lacks standing; (B) Israel is not subject to personal jurisdiction in California; (C) Plaintiff's claims are governed by a mandatory forum selection clause; (D) Plaintiff's claims are barred by res judicata and collateral estoppel; (E) Plaintiff's claims are barred by the statute of limitations; (F) Plaintiff failed to state claims for relief; (G) Plaintiff failed to join necessary and indispensable parties; and (H) Waibel's Cross-Complaint suffers from the same defects and fails to state any claim for relief. To the extent necessary, the Court addresses each in turn.

### A.     Standing

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

As a general rule, the trustee, and not the trust's beneficiary, is the real party in interest with standing to sue and defend on the trust's behalf.[1] *See Wolf v. Mitchell, Silberberg & Knupp*, 76 Cal. App. 4th 1030, 1035-36 (Ct. App. 1999).[2] California courts have a well-established exception, however. "[A] trust beneficiary can pursue a cause of action against a third party who actively participates in or knowingly benefits from a trustee's breach of trust." *In re Estate of Bowles*, 169 Cal. App. 4th 684, 692 (Ct. App. 2008) (citing numerous cases). Plaintiff's entire FAC is replete with allegations of a broad conspiracy to defraud Plaintiff out of millions of dollars. Central to that scheme are allegations that Israel (and Lujan) performed legal services intended to prevent Plaintiff from discovering the existence of the 56% retainer, including Waibel's participation and consent to such an agreement without first obtaining Plaintiff's informed consent. The Court, therefore, concludes that Plaintiff has standing to bring this action despite his status as a trust beneficiary. Accordingly, the Court **DENIES** Israel's motion to dismiss for lack of standing.

### B.      Personal Jurisdiction

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff must make "a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1119 (9th Cir. 2002); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). If the plaintiff makes the requisite prima facie showing, the plaintiff retains the burden of proving personal jurisdiction by a preponderance of the evidence at a later stage of the proceedings, either at an evidentiary hearing or at trial. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). When not directly controverted, plaintiff's version of the facts must be taken as true, and conflicts between the facts contained in the parties' affidavits should be resolved in favor of the plaintiff. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001).

---

[1] Fed. R. Civ. P. 17(a)(1) states, in pertinent part: "an action must be prosecuted in the name of the real party in interest."

[2] As neither party contends otherwise, the Court applies California law to this issue.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

"Due process requires that nonresident defendants have certain minimum contacts with the forum so that maintenance of a suit does not offend traditional notions of fair play and substantial justice." *See FDIC v. British-American Ins. Co.*, 828 F.2d 1439, 1441-42 (9th Cir. 1987). For this reason, personal jurisdiction over each defendant must be analyzed individually. *See Calder v. Jones*, 465 U.S. 783, 790 (1984). "If the nonresident defendant's activities within a state are 'substantial' or 'continuous and systematic,' there is a sufficient relationship between the defendant and the state to support jurisdiction even if the cause of action is unrelated to the defendant's forum activities." *See Data Disc*, *Inc*., 557 F.2d at 1287. "If, however, the defendant's activities are not so pervasive as to subject him to general jurisdiction, the issue of whether jurisdiction will lie turns on an evaluation of the nature and quality of the defendant's contacts in relation to the cause of action." *See id.* The former is known as "general [ ] jurisdiction," and the latter, "specific [ ] jurisdiction." *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).

### 1. *General Jurisdiction*

A defendant whose contacts with a state are "substantial" or "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). The standard for establishing general jurisdiction is "fairly high," *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986), and requires that the defendant's contacts be of the sort that approximate physical presence, *see Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984). Put another way, a defendant must not only step through the door, it must also "[sit] down and [make] itself at home." *Glencore Grain Rotterdam B.V.,* 284 F.3d at 1125. Factors to be taken into consideration are whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there. *See Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986). It is the nature and extent of the contacts that determines whether they are "substantial" or "continuous and systematic." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006). Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence. *Id*.

In this case, Israel admits to having been a California resident from 1996 to 1997. (Decl. of Barry J. Israel in Supp. of Israel's Mot., ("Israel Decl.") ¶ 3.) In addition, Israel admits to having maintained a membership with the California Bar from 1974 to 2001. (*Id*., ¶ 11.) Furthermore, Israel admits he maintained a vacation and investment property in Santa Barbara,

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

California from 2000 to 2004. (*Id.*, ¶ 12.) On balance, however, these contacts simply do not rise to the continuous and systematic level required to confer general jurisdiction over Israel. Specifically, Israel attests that from 1975 through 1995, he was a resident of Washington, D.C. where he practiced law. In addition, Israel avers that he has never made an appearance before any California court nor engaged in the practice of law in California. (*Id.*, ¶ 11.) Furthermore, beginning in 1997 up to 2001, Israel contends that he filed tax returns in CNMI as a resident. (*Id.*, ¶ 4.) In 2002, Israel allegedly moved from CNMI to Bangkok, Thailand where his federal tax return shows Thailand residency. (Israel Decl. ¶ 7.) Lastly, in 2003, Israel moved to Vietnam where he now resides permanently with his wife. (*Id.*, ¶¶ 7-9.)

Plaintiff nevertheless alleges that Israel resides in Santa Barbara, California, attended college in California, was admitted to the California Bar, and has been practicing law in California from 1975-2001. (FAC ¶ 3.) Also, Plaintiff alleges that "since April 1999, Israel retained and did a great deal of business associated with this case in California with the JLH Trust operating out of Goleta and then Morro Bay, California. (*Id.*) Further, Israel allegedly held a telephone listing, maintained an office, purchased and owned real property, advertised and solicited business, represented himself to be a California lawyer in the underlying claim, visited California, worked as an employee of one of the JLH Trust's significant assets, invested money in California businesses, solicited California individuals for recommendations for trustees, participated in various activities related to this case, and likely filed tax returns and maintained a residence and bank account in California. (Pl.'s Opp'n 7-8.)

Still, these allegations do not show that Israel's contacts with California were "continuous and systematic," or "approximate[d] physical presence in the forum state." *Schwarzenegger*, 374 F.3d at 801. It is well established that "the mere presence of property in a state does not establish a sufficient relationship between the owner of the property and the state" to meet the minimum contacts requirement of due process. *Rush v. Savchuck*, 444 U.S. 320, 327 (1980) (citation omitted); *see also Trierweiler v. Croxton and Trench Holding Corp.* 90 F.3d 1523, 1544 (10th Cir. 1996) (finding no general jurisdiction when defendant: (1) owned a joint bank account in Colorado; (2) belonged to the Tenth Circuit Bar; (3) had lived in Colorado for four years prior to the events at issue; (4) owned property in Colorado; (5) was a limited partner in a Colorado partnership prior to the events at issue; (6) was a member of an advisory board of a Colorado corporation; (7) often traveled to Colorado; and (8) engaged in "relatively small amounts of business" in Colorado). In addition, not only has he never appeared before a California court, Israel's California bar license has been suspended since 2001. At this point, the fact that Israel was licensed in this state and at one point owned property are "simply too stale to

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

permit the exercise of general jurisdiction." *Fru-Con Const. Corp. v. Sacramento Muns. Utility Dist.*, No. CIV. S-05-583 LKK/GGH, 2007 WL 2384841, at *8 (E.D. Cal. August, 17, 2007); *see also Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (noting that other courts have found three to seven years to be reasonable in assessing contacts in the forum state) (citations and quotations omitted). Furthermore, emails, phone calls, mailings with the Trustee, Waibel, does not confer general jurisdiction over Israel. *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (concluding that solicitation of business through visits, telephone calls, and telexes to the forum state did not support general jurisdiction); *Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980) ("[U]se of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state."); *see also Noonan v. Winston Co.*, 135 F.3d 85, 92-93 (1st Cir. 1998) (finding nonresident company's regular and frequent telephone calls, faxes, and letters to resident company to solicit business insufficient to establish general jurisdiction). As such, Israel cannot be said to have sat down and made himself at home in California. *See Glencore Grain Rotterdam B.V.,* 284 F.3d at 1125. Accordingly, no general jurisdiction exists over Israel.

>    2.    *Specific Jurisdiction*

The Ninth Circuit employs a tripartite test to determine whether a defendant satisfies the requirements of specific jurisdiction:

> (a) The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (b) The claim must be one which arises out of or results from the defendant's forum-related activities; and (c) Exercise of jurisdiction must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. "The plaintiff bears the burden of satisfying the first two prongs of the test. If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* (internal citation omitted). "On the other hand, if the plaintiff succeeds in satisfying both of the first two prongs, 'the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007) (citations omitted). The Ninth Circuit has noted that the "purposeful availment" prong, "[d]espite its label . . . includes both purposeful

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

availment and purposeful direction. It may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006). The Court will consider each prong as necessary.

      a.     <u>Purposeful</u> <u>availment</u>

To satisfy the requirements of specific jurisdiction, the plaintiff must show that the defendant "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Sher,* 911 F.2d at 1362. Purposeful direction or "express aiming" of the defendant's acts happens when "the defendant is alleged to have engaged in wrongful conduct at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). In tort cases, the standard inquiry is "whether a defendant purposefully directs his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Menken,* 503 F.3d at 1057. The "effects test" set forth in the Ninth Circuit consists of three requirements: that the defendant "1) committed an intentional act, 2) expressly aimed at the forum state," which 3) "must have caused harm, the *brunt of which is suffered* and which the defendant knows is likely to be suffered *in the forum state*." *Yahoo! Inc.,* 433 F.3d at 1206 (internal quotation marks omitted, emphasis in original).

Here, Israel's contacts with the forum state are insufficient to establish purposeful availment. Israel's contact with California consisted of retaining Waibel, a California resident as Hillbroom's trustee, and other incidental contacts related to Waibel and JLH Trust. Israel allegedly traveled to California on several occasions on business related to the JLH Trust, and has had emails, phone calls, and mailings directed to the same. These contacts, however, fail to satisfy, at the least, the third prong of the effects tests requiring that the brunt of the harm occur in the forum state, since the majority of the harm in this case happened in Guam. For example, the majority of Israel's work related to the Hillbroom case occurred in Guam. Also, the 38% contingency fee was established and approved in Guam Guardianship Court, as was the fee increase to 56%. (Compl. ¶¶ 35, 38.) Further, the JLH Trust was formed under the laws of the Cook Islands. (*Id*., ¶ 1.) Finally, the Retainer Agreement regarding the contingency fee specifically selects Guam as the forum for conflict resolution. (*Id*., Exh. A) (stating that the "Agreement shall be governed by, construed, and enforced in accordance with the laws of the Territory of Guam. Any and all disputes arising out of [the] Agreement shall be brought in the

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

U.S. District Court of Guam.")  As such, Lujan did not purposefully avail himself of the forum state and the first prong of the test is not met.

        b.      <u>Reasonableness</u>

Even if Plaintiff had succeeded in satisfying both of the first two prongs of the test, exercising jurisdiction would be unreasonable.  The Ninth Circuit articulated seven factors to consider when weighing the reasonableness of the forum state:

> The extent of purposeful availment; the burden on the defendant; the extent of conflict with sovereignty of the defendant's state; the forum state's interest in adjudicating the suit; the most efficient judicial resolution of the dispute; the convenience and effectiveness of relief for the plaintiff; and the existence of an alternative forum.

*Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1198-99 (9th Cir. 1988).  No single factor of this test is dispositive.  *Roth v. Garcia Marquez*, 942 F.2d 617, 623 (9th Cir. 1991).

These factors, on balance, weigh against a finding of personal jurisdiction.  As noted above, the Court finds no purposeful availment in this case.  Also, the burden on Israel would be great if he is hailed into this Court, as he is now a resident of Vietnam.  In addition, the extent of conflict between California and Guam weigh against Plaintiff.[3]

Furthermore, the Court articulated in the Order dismissing Co-Defendant, Lujan (Dkt. No. 72.) that the most convincing factor is that California really has no interest whatsoever in seeing this action through.  Plaintiff is a citizen of Idaho and not of California.  (FAC ¶ 1.)  California, therefore, does not have an interest in this case such as would exist if it were providing an effective means of redress for one of its citizens.  *See Sinatra*, 854 F.3d at 1200.  Guam or the CNMI, on the other hand, are alternative forums that can more efficiently,

---

[3] Similarly, the Court noted in the March 24, 2010 Order (Dkt. No. 72.): "[T]he Court surmises that there may ultimately be a conflict between the sovereignties of California and Guam.  Other than his RICO claim, Plaintiff alleges against [Defendants] state law claims of fraud, breach of fiduciary duty and legal malpractice, the latter two of which relating to a retainer agreement entered into with a licensed Guam attorney.  Throw in the myriad Guam court orders and governing guardianship laws, and this factor is anything but resolved in Plaintiff's favor."

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

conveniently and effectively resolve Plaintiff's claims against Israel. Indeed, it appears as though the vast majority of relevant witnesses and evidence are located outside of California, and more likely than not can be found in Guam or the CNMI. All relevant court documents, Plaintiff's family, and, presumably, Israel's associates, including Lujan, are located in either Guam or the CNMI. The Guam Guardianship court was charged with approving the retainer agreements at issue in this case (which it did on two separate occasions), and Lujan's alleged extrinsic fraud in shielding Plaintiff's representatives from learning of the 56% retainer was committed in Guam. Guam or the CNMI are thus alternative forums where Plaintiff could potentially bring his claims against Lujan, and Plaintiff has failed to demonstrate otherwise. *See Pacific-Atlantic Trading Co. v. M/V Main Express*, 758 F.2d 1325, 1331 (9th Cir. 1985) (plaintiff bears the burden of proving unavailability of an alternative forum). For these reasons, exercising jurisdiction over Israel in California would be unreasonable.

### III. CONCLUSION

For the foregoing reasons, Israel's Motion to Dismiss the First Amended Complaint is **GRANTED**. Accordingly, Israel is dismissed from the First Amended Complaint for lack of personal jurisdiction. Israel shall lodge with the Court within 10 days a Proposed Judgment that comports with the findings set forth in this Order.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-0841 ODW (Ctx) | Date | November 29, 2010 |
|---|---|---|---|
| Title | *Junior Larry Hillbroom v. David Lujan, et al.* | | |

    The Court **DEFERS RULING** on the Motion to Dismiss the Cross Complaint. Defendant, Israel, shall further brief the Court with particularity the grounds for seeking dismissal. *See* Rule 7. While simply incorporating arguments by reference may be appropriate in some instances, the Court finds that it is not proper here where, for example, jurisdictional issues are adjudicated based on each individual defendant and their respective relation to the allegations made in the complaint. *See Rush*, 444 U.S. at 332-33. Israel shall file a brief no later than 10 days from the date of this Order. Cross-Complainant, Waibel, may supplement his Opposition papers already filed.

    IT IS SO ORDERED.

                                                                                      -- : 00

                                                Initials of Preparer    RGN